**FOERSTER** et, Plaintiffs, v. **FOERSTER** et, Defendants.

Probate Court, Franklin County.

No. 156573.   Decided October 1, 1954.

130

Chalmers M. Parker, Columbus, for plaintiff.

## OPINION

By McCLELLAND, J.

This is an action for a declaratory judgment brought by Dorothy Foerster and Florence F. Stowell, as Executrices of the will of George B. Foerster, deceased. The decedent left a simple will in which he left his business, known as "Foerster's Restaurant" to his widow, Dorothy Foerster, and the residue of his estate to his widow and to his sister, Florence F. Stowell, share and share alike. His total gross estate for federal estate tax purposes amounts to four hundred thousand dollars, the restaurant business being appraised at thirty thousand dollars. The widow has elected to take under the will. The petition asks the court to determine the manner in which the federal estate tax shall be paid and charged as between the widow and the sister. The will is silent as to the payment of any taxes.

In addition to the probate assets the gross estate includes the following non-probate assets:

| | | |
|---|---:|---|
| Insurance | $ 13,800.00 | payable to widow |
| Jointly owned property | 8,149.52 | payable to widow |
| Transfers during lifetime | 4,875.00 | payable to widow |
| Total | $ 26,824.52 | payable to widow |
| Insurance | $ 10,978.41 | payable to sister |
| Jointly owned property | 1,960.00 | payable to sister |
| Total | $ 12,938.41 | payable to sister |

Upon distribution of the decedent's estate, the widow will receive more than may be allowed as the marital deduction.

The question is: "How is the burden of the federal estate tax to be distributed between the widow and the sister?"

Our determination of this question calls for an analysis of the opinion of our Supreme Court in the case of **Miller v. Hammond, 156 Oh St 475,** decided January 20, 1952, which is the first and only case involving the marital deduction that has been decided by the supreme court. That case arose in this court, our opinion having been reported in 42 O O 325. Our decision was affirmed by the court of appeals but was reversed by the supreme court. In that case the widow elected to take under the statute of descent and distribution and against the will. In so doing she became entitled to one-third of the net estate. The supreme court held that the marital deduction was more than a deduction from the value of the gross estate; that it was an exemption in favor of the widow from the burden of the federal estate tax. Even though the marital deduction is in the same category under the federal statute as a charitable deduction, yet the supreme court distinguished the case of Y. M. C. A. v. Davis, 106 Oh St 366 (affirmed in 264 U. S. 47), as being a will construction case and as having been decided before the marital deduc-

tion was inserted in the federal estate tax statute providing for deductions (Section 812, Title 26).

The supreme court prefaces its opinion with the admonition that "The construction of the statutes of this state relating to the descent and distribution of the estate of a decedent is the quesion primarily presented. (Sec. 10503-4 et seq., GC.)", and in support of this statement quotes from the leading case of Riggs, Gdn., v. Del Drago, 317 U. S., 95, 98. The court also states that "This court is necessarily relegated to an examination of the pertinent statutes of Ohio under which the distribution to the widow of her share of her husband's estate must be determined". However, the supreme court, after citing **10504-55 GC (2107.39 R. C.)** and **10503-4 GC (2105.06 R. C.)** (which we think are the only pertinent statutes) and other statutes, comes to the conclusion that there is an "absence of any specific legislative provision controlling or affecting the determination of the question presented".

Finding no specific legislative provision affecting the question at issue, the supreme court resorted to the equity power of the court as it is spelled out by the General Assembly for the Probate Court in the last paragraph of §10501-53 GC (§2101.24 R. C.), to-wit:

"The Probate Court shall have plenary power at law and in equity fully to dispose of any matter properly before the court, unless the power is expressly otherwise limited or denied by statute."

We quote from the supreme court:

"The application of fundamental principles of equity in the situation here presented would be in accordance with the established legislative policy."

Accordingly the court rules "that the Probate Court, in the exercise of its equity power conferred upon the court by §10501-53 GC, in the distribution of intestate property should award such widow her statutory share of such estate", and that "no federal estate tax is deductible from her portion of the estate."

The supreme court also resorted to precedents of other states for the manner in which it apportioned the federal estate tax, citing Industrial Trust Co. v. Budlong (R. I. 1950), 76 A. (2d) 600; Gaede, Exr. and Trustee, v. Carroll, 114 N. J. Eq., 524; and Lincoln Bank and Trust Co. v Huber (Ky. 1951), 240 S. W. (2d) 89. These cases, however, with the exception of the last one, are cases involving non-probate and probate assets. The controversy in those cases was between the recipients of probate and non-probate assets as to how the burden of the federal estate tax was to be determined. The courts in those cases did not have before them the question of interpretation of a statute of decent and distribution. No statute was involved, so they applied the doctrine of equitable apportionment of the federal estate tax as was done in this state in the case of **McDougall v. Bank, 157 Oh St 45.** In the **Miller Case**, however, an entirely different question was raised. The controversy was between the surviving spouse and the two children as to whether the intestate share of the probate assets of the surviving spouse should bear a part of the burden of the federal estate tax, or whether the whole burden of the tax should be borne by the children who were the recipients of the other two thirds of the probate assets. It was a question of what

was the distributive share of the surviving spouse under our statute of descent and distribution.

The last case, Lincoln Bank and Trust Co. v. Huber (Ky. 1951), 240 S. W. (2d) 89, involved probate assets. However, in that case the parties seem to have been in accord with the lower court's decision and it would appear that an appeal was prosecuted to the Court of Appeal of Kentucky merely for the purpose of obtaining a final determination of the matter. Furthermore, the Court of Appeals rested its decision on the authority of In re Peters' Will, Sur., 88 N. Y. S. (2d) 142. We quote from the court's decision:

"Under the authority of In re Peters above, we conclude that if the marital allotment is a deductible item before arriving at the net taxable estate, and since that item does not add to the tax, it cannot be burdened with any portion of the federal estate tax. The surviving spouse, therefore, should receive her share undiminished by any federal estate tax."

We pointed out in our original decision in the **Miller Case (42 O O 325)** that the **Peters' case** involved the construction of a New York apportionment of federal estate taxes statute, whereas Ohio has no such apportionment statute, and that consequently the **Peters' case** could not be considered as authoritative upon the question before us.

For additional authority on the question of the apportionment of the tax the supreme court quotes extensively from Montgomery's Federal Taxes, Estates, Trusts and Gifts (1950-1951), 763, and then comes to the conclusion that it is "clear" from the quotation from Montgomery "that the plan of federal taxation which created the marital deduction purports to place a **surviving spouse** in common law states on a taxable basis comparable to that of a surviving spouse in states in which the property of married people is considered as community property." (Emphasis ours.) What we get from reading the quotation from Montgomery is, (using the words of the author himself) that "The amendments to the estate tax law appear to achieve at least substantial equality between community property and separate property so far as the federal estate tax is concerned." (Emphasis ours.) In other words there is the same federal tax saving so far as the estate of the decedent is concerned. Montgomery was not discussing the tax from the standpoint of the surviving spouse. We cannot agree, however, with the statement of Montgomery that the Revenue Act of 1948 made drastic changes in the theory of taxation of estates. As we stated in our opinion in the **Miller Case,** the marital deduction was made merely a deduction from the gross estate, not an exemption in favor of the surviving spouse, and was in the same category as the charitable deduction.

The supreme court finds further reason for the apportionment of the tax from the federal estate tax law itself. It calls attention to the non-probate-assets mentioned in Section 811 (f) and (g) (insurance and property received under a power of appointment) as having to bear their share of the burden of the tax. This is provided for in Section 826 (e) and (d). It is very significant to note, however, that the latter section also provides, in case such non-probate assets are received by the surviving spouse for which the marital deduction can be allowed, that the surviv-

ing spouse is exempt from the burden of the federal estate tax so far as those assets are concerned. This exemption in favor of the surviving spouse was inserted in section 826 (e) and (d) at the same time the marital deduction amendment was enacted. It is true that the federal estate tax law authorizes apportionment of the tax as to some non-probate assets, but it is also true that it specifically exempts the surviving spouse from the burden of the federal estate tax as to such non-probate assets up to the amount of the marital deduction. This is the first time that an exemption in favor of any beneficiary has been written into the federal estate tax law since its adoption in the year 1916.

If Congress intended the other assets of the estate (probate assets) up to the amount of the marital deduction to be exempt from the burden of the tax, would it not have so amended the law, as it did in Section 826 (c) and (d), to provide for such exemption? The fact that it exempted the surviving spouse in one instance and not in the other is indeed quite significant.

The supreme court, however, seems to rely mostly upon what it considers the equitable power of the probate court, under §10501-53 GC (2101.24 R. C.), to determine the distributive share of the surviving spouse under the statute of descent and distribution. Incidentally, 10501-53 GC (2101.24 R. C.), adds nothing to the equity power of the probate court because this plenary power is conferred upon the probate court by Article 4, Section 8, of the Ohio Constitution. See In re Estate of Miller, 95 Oh Ap 457 (affirmed in 160 Oh St 529), which case covers a different phase of this same Miller estate.

The employment of the equity power of the probate court in determining the distributive share of an heir under the statute of descent and distribution is entirely without precedent in Ohio. Our statute of descent and distribution is definite and certain and not subject to variation by a court sitting in equity. The law of descent and distribution is one of the most important and most frequently used statutes of the state. Of necessity it must be definite and certain in its terms. If it were open to interpretation on equitable principles, our courts would be flooded with suits for a determination of the distributive shares of the heirs of estates. Being a definite rule of law defined by statute, "Equity follows the law."

Concerning the construction of the statute of descent and distribution, we refer to 14 O. Jur., page 104 and quote the following:

"The Statutes of descent and distribution are not to be construed and administered upon equitable principles, but by rules of law. Courts cannot, by reason of any real or imaginary equities, qualify or annul rights granted by legislative enactment. In other words, the general assembly must be held to have intended to express its entire meaning by the impact of the words used.

"The laws of descent are mere arbitrary rules for the transmission of property, enacted by the legislature, and cannot be modified by courts by reason of equitable considerations * * *."

One of the authorities cited in support of the above text is Patterson v. Lamson, 45 Oh St 77, which case has been cited and followed numerous times. See also Drake v. Rogers, 13 Oh St 21. In the case

of **In re Estate of Dickey, 87 Oh Ap 255,** the claim was made that the probate court, under 10501-53 GC (2101.24 R. C.), should have exercised its equity powers in apportioning among all the beneficiaries under the will counsel fees charged the executor for defending a will contest. The court in rejecting the claim of equitable apportionment and charging the whole fee against the residuary estate, said: "Equity follows the law, and cannot be invoked to destroy or supplant a legal right."

Equity follows the law even though by following the law the federal government is entitled to a larger amount of taxes from the estate. The amount of taxes due is not controlled by equitable principles but by statutory law. If the burden of the tax appears to be inequitable relief must be sought from the legislative body which imposed the burden and not from the courts.

In deciding the **Miller case** in the first instance this court took it for granted that the insertion of the marital deduction in the federal statute did not change the accepted construction of the pertinent statutes of Ohio under which distribution to the widow of her share of her husband's estate must be determined. From the time the case of **Tax Commission v. Lamprecht, 107 Oh St 535,** was decided in 1923 (the case arose in 1920), it has always been the practice in Ohio, in intestate estates, to deduct the amount of the federal estate taxes from the amount of the estate, the same as debts and charges are deducted, and to consider the balance as the net estate for distribution in accordance with the statute of descent and distribution. Thousands and thousands of estates have been administered by the probate courts of Ohio in this manner and in all these years no question has ever before been raised as to this method of distribution of an estate to the heirs. While it is true, and in our opinion in the **Miller Case** we did not argue the point, that there is no specific statute in Ohio regulating the payment of the federal estate tax (the federal law does that), like there is for the payment of debts, yet it has always been the practice in Ohio to administer an estate which is subject to the federal estate tax in the manner above set forth. (For example, see the case of **Davidson v. Savings and Trust Co., 129 Oh St at page 430.**) If there is no further Ohio case law involving the federal estate tax in an intestate estate, can it not be said that the federal estate tax law in Ohio has been so uniformly administered that it has been considered so firmly grounded as to warrant no court interpretation? Is that not precedent enough for us to hold as we did in the **Miller Case?**

We devoted most of our opinion in the **Miller Case** in an attempt to analyze the marital deduction amendment to the federal estate tax law. We examined it carefully to see whether the amendment changed the nature of the tax from that of an estate tax on the right to transmit an inheritance to that of a tax on the right of the recipients to receive an inheritance. We came to the conclusion that the nature of the tax had not been changed so far as probate assets are concerned. And the supreme court found in the federal estate tax law as amended no specific legislative provision controlling or affecting the determination of the question presented.

Before the enactment of the federal estate tax law, we had a federal

inheritance tax which was a charge upon the receipt of property, based on different rates according to the relationships of the recipients to a decedent. The federal estate tax law in 1916 changed the nature of that tax to a tax upon the transmission of an estate by a decedent. As Justice Murphy said in **Riggs, Gdn. v. Del Drago, 317 U. S. 95, 98**:

"It did not undertake in any manner to specify who was to bear the burden of the tax. Its legislative history indicates clearly that Congress did not contemplate that the Government would be interested in the distribution of the estate after the tax was paid, and that Congress intended that state law should determine the ultimate thrust of the tax."

In the leading case of Re Hamlin, 226 N. Y. 407 (1919), annotated in 7 A. L. R. 701, the court, in explaining the nature of the estate tax law of 1916 as compared with the former federal inheritance tax law, quotes from a very significant statement made by Mr. Ketchin, chairman of the ways and means committee of the House of Representatives, as follows:

"* * * We levy an entirely different system of inheritance taxes. We levy the tax on the transfer of the flat or whole net estate. We do not follow the beneficiaries and see how much this one gets and that one gets, and what rate should be levied on lineal and what on collateral relations, but we simply levy on the net estate. This also prevents the Federal government, through the Treasury Department, going into the courts contesting and construing wills and Statutes of Distribution."

From the above we can see the reason why the federal government established an estate tax as distinguished from an inheritance tax. As stated before, we cannot see how, by the insertion of the marital deduction amendment, Congress intended to change the nature of the tax as far as probate assets are concerned. We have read the reports of the congressional committees that had the U. S. Revenue Act of 1948 under consideration and we find nothing in those reports to indicate a change in policy or that Congress contemplated that the government would now be interested in the distribution of the probate assets of an estate after the tax was paid. We copy a significant paragraph from the report of the Senate Committee, as follows:

"Under the estate-tax provision of your committee's bill a **decedent** spouse is allowed a marital deduction from **his** gross estate in the amount of the value of all interests in property passing outright from the decedent to the surviving spouse by way of bequest, devise, transfer, right of survivorship in jointly held property, etc. The deduction is limited to an amount not in excess of 50 percent of the adjusted gross estate." (U. S. Code Congressional Service for 1948, Vol. 2 at page 1189.) (Emphasis ours.)

From the above it is apparent that the committee was considering the marital deduction from the standpoint of the "decedent spouse" and not from the standpoint of the **decedent's spouse.** Nevertheless, the Surrogate Judge in the case of In re Peter's Will, 88 N. Y. Sup. (2d) 142, which seems to be the first reported case on the subject, looked at the marital deduction from the standpoint of the surviving spouse when he stated that, "Its purpose is to allow a surviving spouse to take a certain portion of the estate free of Federal Estate Taxes." It appears now that many courts in other jurisdictions have

fallen in line with the Surrogate Judge's conception of the purpose of the marital deduction.

The whole purpose Congress had in the enactment of the marital deduction amendment, was, as stated in the Senate Committee's report:

"Equalization is provided for the tax burden of married couples in common-law and community-property states. The bill corrects existing inequalities under the estate and gift taxes, as well as the individual income tax." (U. S. Code Congressional Service, Second Session, 1948, Vol. 2, page 1163.)

"It is recognized that complete equalization of the estate and gift taxes cannot be achieved because of the inherent differences between community property and non-community property. However, the new provision will result in equality in important situations." (U. S. Code Congressional Service, Second Session, 1948, Vol. 2, page 1189.)

And as stated by Montgomery:

"The amendments to the estate tax law appear to achieve at least substantial equality between community property and separate property so far as the federal estate tax is concerned."

Equalization, as far as possible, is further indicated by certain provisions of the marital deduction law. The interest in property must pass outright to the surviving spouse to qualify for the marital deduction. "This", says the Senate Committee's Report on page 1190, "will equate the **decedent** in the common-law State with the **decedent** in the community-property State who cannot by his will effect in any way the surviving spouse's interest in the community property." (Emphasis ours.) It is also provided in Section 812e(1) (E) that, in determining the amount of property which will qualify for the marital deduction, there shall be taken into account the effect which the amount of the federal estate tax and inheritance tax has upon the net value to the surviving spouse of such property. In other words, if the amount passing to the surviving spouse is reduced by federal estate or inheritance tax charges, only the amount as so reduced will be taken into consideration in determining what will be the maximum amount of property passing to the surviving spouse for which a marital deduction may be claimed. The Senate Committee's Report on page 1227 explains this provision, as follows:

"This provision is designed to prevent any implication that such taxes should not be taken into account where such taxes and the marital deduction are mutually inter dependent  This provision is substantially the same as that provided in section 812(d) of the code, relating to bequests, etc., to charity. The rule applies where the burden of a death tax falls upon the surviving spouse or the property in which an interest passess to the surviving spouse."

Congress was intent on equalizing the tax burden on the estate by providing for a deduction equal, as far as possible, to the outright one-half retained by the surviving spouse in community-property states. That is why it was stipulated by Congress that the interest in property must pass outright to the surviving spouse to qualify for the marital

deduction, and that in determining the total amount of property allowable for the marital deduction there shall be taken into account the effect which any federal estate and inheritance taxes might have upon the amount of property allowable for that purpose.

Congress was considering the equalization of the tax from the standpoint of the federal estate tax chargeable against the estate of the decedent as a whole, and not from the standpoint of any special tax saving for the surviving spouse alone. The marital deduction greatly lessens the federal estate tax chargeable against a decedent's estate and inures to the benefit of all the receipients of the estate.

The federal estate tax law and the Reports of the Congressional Committees are silent as to the burden of the tax as far as probate assets are concerned. This is left to the law of the individual states and to the last will and testament of the decedent, Riggs v. DelDrago, 317 U. S. 95.

It is, therefore, still our opinion that, under the law of Ohio, the marital deduction should be considered as a deduction from the adjusted gross estate to be taken advantage of by, and for the benefit of, all the heirs of a decedent, and not as an exemption in favor of the surviving spouse alone.

However, it matters not what our opinion may be as to the nature of the marital deduction, for, under the rule of **stare decisis,** we are bound by the authority of the **Miller Case** as far as it may be applied to the questions presented in this case. Since the decision in the **Miller Case,** there has been quite a "rash" of elections by surviving spouses to take under the statute of descent and distribution and not under the will so that the surviving spouses might reap the benefit of the decision in that case. There has been a hesitancy on the part of lawyers to have their clients elect to take under wills for fear that the tax advantage to the surviving spouse, under the **Miller Case,** would not apply, since the court limited its decision to the particular facts of that case.

In the case at bar, however, the widow elected to take under the will. This being the case it will be necessary for us to determine how much of the burden of the federal estate tax will be borne by the widow as specific legatee of the restaurant business and as residuary legatee of half of the residue under the will of the decedent, and also as beneficiary of non-probate assets; and how the burden will be borne by the sister as residuary legatee of half of the residue and also as beneficiary of non-probate assets.

We will first consider the non-probate assets payable to the widow. The widow has claimed these assets as part of the marital deduction. Since these assets are payable to the widow outright and do not pass under the will, there is no question in our mind but that they should be placed in the same category as inestate property, so far as the burden of the federal estate tax is concerned. It therefore follows that these assets payable to the widow should be considered as free from the burden of the federal estate tax under the decision of the supreme court in the **Miller Case.** As to the insurance payable to the widow, the widow should receive that free of the burden of the tax in accordance with U. S. Code, Title 26, section 826(c).

However, if the widow is not required to pay the proportionate share of the federal estate tax on these non-probate assets, who is going to bear the burden of the tax? The executrices are responsible for the payment of the tax (Section 822[b]), but out of what assets are the executrices to pay this proportionate share of the tax? The only remaining assets of the estate out of which the tax may be paid are those included in the residuary estate. The residuary estate is what is left of the estate after paying the debts, charges, prior legacies and costs of administration. The federal estate taxes that are chargeable against the residue must also be deducted before the amount of the residue for distribution may be determined. Under the terms of the will the sister is entitled to one-half of the residue just the same as the widow. Therefore, even though, under the Miller Case, the widow is exempt from bearing the proportionate share of the tax on the non-probate assets payable to her, yet the tax must be deducted from the residue before she receives her half of the remaining residue. This is in accordance with holding of the court in the case of Y. M. C. A. v. Davis, 106 Oh St 366 264 U. S. 47, where, even though the share of the estate devised to the charity was deductible before the tax was determined, yet the charity, as residuary legatee, was required to pay the tax chargeable against the entire estate. It is our opinion that the Y. M. C. A. case is still the law of Ohio and is equally applicable to 'the marital deduction as well as to the charitable deduction, where the residuary estate under a will is involved. We consider the marital deduction as enjoying no greater preferment than the charitable deduction.

The same reasoning applies with reference to the widow's specific legacy of the restaurant business. The proportionate share of the tax on this legacy must be borne by the residuary estate.

Since the federal estate tax chargeable against the probate-assets must be paid before the residuary estate may be determined, the widow's one-half of the residue as well as the sister's one-half is subject to the federal estate tax chargeable against the residuary estate.

However, with reference to the non-probate assets payable to the sister, the sister will be required to pay the proportionate share of the federal estate tax attributable to the $10,978.41 of insurance, in accordance with U. S. Code, Title 26, section 826(c). The same rule will apply to the $1960.00 of jointly owned property payable to the sister, under the decision of the supreme court in the case of McDougall v. Bank, 157 Oh St 45. The latter case prescribes the formula to be used in determining the share of the federal estate tax which should be allocated to the non-probate assets payable to the sister, totalling $12,938.41, which share of the tax is the individual obligation of the sister. The formula appears on page 59 of the court's opinion and reads as follows:

"Thus, in the instant case, the trust estate will be required to pay such portion of the total tax paid as the value of the trust assets, for estate tax purposes, bears to the sum of (a) the net estate, for estate tax purposes, and (b) the exemption allowed in computing that net estate, determined under Section 935(c), Title 26, U. S. Code."