**In re ESTATE of Herbert R. PENNEY, Deceased.**

**Milton H. PENNEY, Executor, Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 73–1618.**

United States Court of Appeals, Sixth Circuit.

Argued April 1, 1974.

Decided Sept. 20, 1974.

**38**

John C. Elam, William W. Ellis, Jr., Richard R. Stedman, Robert E. Leach, Vorys, Sater, Seymour & Pease, Columbus, Ohio, on briefs, for petitioner-appellant.

Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Loring W. Post, Charles E. Anderson, Attys., Tax Div., Dept. of Justice, Washington, D. C., on briefs, for respondent-appellee.

Before PHILLIPS, Chief Judge, and EDWARDS and PECK, Circuit Judges.

JOHN W. PECK, Circuit Judge.

The issue involved in this appeal is whether the Tax Court properly applied Ohio law to the facts herein when it required that decedent's transfers to his surviving spouse and charities in his will and revocable trust must be charged, in the absence of a clearly expressed intention to the contrary, with their pro rata share of the federal estate tax liability generated by his estate.

The facts are undisputed. Decedent, Herbert R. Penney, died testate on March 2, 1966 in Columbus, Ohio, leaving a probate estate valued at $4,722,687.00. For the purposes of this appeal the pertinent provisions of decedent's will are:

"ITEM THREE: In the event that my said wife, Anna Cornelia Penney, survives the date of my death, then and in that event I give and bequeath to her that part or portion of my estate which shall be equal to fifty per cent (50%) of the value of my adjusted gross estate as finally determined for Federal Estate Tax purposes, less the value of the property which I have herein given my wife and less the aggregate amount of marital deduction, if any, allowed or allowable by reason of interests in property, including insurance proceeds, passing or which shall have passed to my said wife, Anna Cornelia Penney, otherwise than by the terms of this Will. Only such properties as shall qualify for the marital deduction, as such term is defined by the United States Federal Revenue Laws, shall be distributed to my said wife under the terms and provisions of this Item of my Will.

"ITEM FOUR: I hereby give and bequeath to the following named charitable organizations and institutions the amount set opposite the respective name of each to be used by such organizations or institutions at the discretion of their respective governing bodies for the general, public charita-

ble work now being carried on by said respective organizations and institutions, viz:

The Salvation Army of Columbus, Ohio
—Twenty-five thousand Dollars ... ($25,000.00)
Aladdin Crippled Children's Hospital Association, Inc., an Ohio Corporation of 34 North Fourth Street, Columbus, Ohio—Twenty-five thousand Dollars ...................... ( 25,000.00)
The Florence Crittenden Home of Columbus, Ohio—Three Thousand Dollars ...................... ( 3,000.00)
The Hannah Neil Mission of Columbus, Ohio—Three Thousand Dollars .... ( 3,000.00)
The Methodist Children's Home of The Ohio Conference, Worthington, Ohio—Three Thousand Dollars ........ ( 3,000.00)
The Masonic Home, Springfield, Ohio—Five Thousand Dollars ........ ( 5,000.00)

\*　　\*　　\*　　\*　　\*　　\*

"ITEM TEN: All the rest, residue and remainder of my property and Estate of every kind and character, both real and personal, and wheresoever the same may be situated, including the portion of my estate hereinbefore in ITEM TWO of this my Last Will and Testament given and bequeathed to my wife Anna Cornelia Penney, should she predecease me I give, devise and bequeath to The Huntington National Bank of Columbus, Ohio, to be added by said Bank to the property and funds now constituting the principal of a Trust Estate held by the said The Huntington National Bank of Columbus, Ohio, as Trustee under the terms of and referring to a Trust entitled 'Second Amended Trust Agreement' dated September 30, 1948 by and between The Huntington National Bank of Columbus, Ohio and me; and to manage, control, and dispose of said property in all respects in accordance with the terms, provisions and conditions of said 'Second Amended Trust Agreement' in like manner as if said property had been a part of the initial Trust Estate."

The trust referred to in Item 10 was valued at $9,765,372.00 at the date of decedent's death, and was included in his gross estate for federal estate tax purposes because he had retained both the right to receive income and the right to revoke the trust. By its terms, one half of the trust property was to be set aside in a separate trust for his widow as soon as possible after his death, and the other half was to be divided into three separate trusts for decedent's children. The widow was to receive the income from her separate trust and had the right, which she later exercised, to withdraw the entire corpus of her trust at any time. Neither the will nor the trust agreement contained any provision regarding the allocation of the federal estate tax burden among decedent's various beneficiaries and successors. As hereinafter appears, it was this circumstance that the Tax Court regarded as critical.

The executor (hereinafter Taxpayer) timely filed an estate tax return and paid the tax shown due thereon after obtaining a contribution from the trustee for the amount of the tax liability attributable to the inclusion of the trust assets in decedent's estate. On the estate tax return Taxpayer claimed a charitable deduction for the full amount paid to charities from both the probate estate and the non-probate trust assets. He also claimed the maximum allowable marital deduction based upon the one *half of the trust property set aside for,* and subsequently paid to, decedent's widow, plus the balance paid to her pursuant to Item 3 of decedent's will. On audit, the Commissioner of Internal Revenue (hereinafter Commissioner) refused to apply Ohio's doctrine of equitable apportionment, and thus would not permit the distribution of the tax liability between the probate estate and the *non-probate* assets. He thus disallowed substantial portions of the marital and charitable deductions on the grounds that the probate estate contained insufficient assets to pay the bequests after payment of the estate tax generated by decedent's estate. Since this interpretation would cause failure of the bequests in the will as well as an estate tax deficiency, the Taxpayer appealed to the Tax Court.

The Tax Court held that apportionment of the estate tax liability was re-

quired by Ohio's doctrine of equitable apportionment as set out in McDougall v. Central Nat'l Bank, 157 Ohio St. 45, 104 N.E.2d 441 (1952). The Tax Court held further that in the absence of decedent's clear expression to the contrary in either his will or trust, the Ohio Supreme Court's decisions in Campbell v. Lloyd, 162 Ohio St. 203, 122 N.E.2d 695 (1954), and Hall v. Ball, 162 Ohio St. 299, 123 N.E.2d 259 (1954), required that the marital and charitable transfers in the will and trust bear their pro rata share of the federal estate tax liability.[1] This holding resulted in an increased estate tax liability since the allowable deductions must be reduced by the amount of the federal estate tax charged against them.[2] The Taxpayer has perfected his appeal from this latter holding only.

It is well settled that how the ultimate impact of federal estate taxes will be borne is a question to be determined according to the law of the state of the decedent's residence. Riggs v. Del Drago, 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106 (1942); Doetsch v. Doetsch, 312 F.2d 323 (7th Cir. 1963). Therefore, since Ohio has no apportionment statute, the Tax Court properly considered, and we must examine, the relevant state case law. United States v. Traders Nat'l Bank, 248 F.2d 667 (8th Cir. 1957).

Historically, where a decedent has died testate without specifically designating which beneficiaries must bear the federal estate tax burden, Ohio has followed the law as stated in Y.M.C.A. v. Davis, 106 Ohio St. 366, 140 N.E. 114 (1922), aff'd, 264 U.S. 47, 44 S.Ct. 291, 68 L.Ed. 558 (1924). That case held that, in the absence of the testatrix's expressed intention in her will or elsewhere, the federal estate taxes would be considered a charge against the general assets of her estate payable prior to the distribution of the estate among the residuary charitable legatees. Thus the residuary legatees had to bear the federal estate tax burden and the beneficiaries of the specific bequests were exonerated. This result was based on the rationale that, by specifically providing for certain individuals and designating others to partake of what remained, the testatrix manifested an intention that those specifically provided for had a priority or preference over her other beneficiaries with respect to satisfaction of her administration expenses, including federal estate taxes. The court reached this conclusion in spite of the fact that it resulted in the exoneration of the recipients of the asssets which generated the estate tax while charging the recipients of the assets which did not generate any part of the tax. The case has subsequently achieved the status of the majority rule in non-apportionment states,[3] and Ohio has even applied it to charge a surviving spouse whose inheritance qualified for the marital deduction, with a pro rata share of the tax burden when she took as a residuary beneficiary of her deceased husband's will. Foerster v. Foerster, 54 Ohio Op. 441, 122 N.E. 2d 314 (P.Ct.1954).

Adherence to the law as set out in Y.M. C.A. v. Davis has not completely precluded the emergence of a doctrine of equitable apportionment in Ohio. The principal statement of this doctrine appears in McDougall v. Central Nat'l Bank, supra, 157 Ohio St. 45, 104 N.E. 2d 441. There the corpus of an inter vivos trust, which was to pass to the decedent's sister in the absence of her contrary testamentary disposition, was included in the decedent's gross estate when she died intestate. Rather than

1. Estate of Herbert R. Penney, Deceased, Milton H. Penney, Executor, Petitioner v. Commissioner of Internal Revenue, Respondent, 59 T.C. 102 (1973).

2. Int.Rev.Code of 1954 § 2056(b)(4)(A); Estate Tax Regs. § 20.2056(b)–4(c). Although the various provisions governing the deductibility of marital and charitable transfers differ in wording and operation, the net effect in the circumstances involved herein is sufficiently similar that, for the purposes of this appeal, they will be treated as operating in the same manner.

3. Cox v. United States, 421 F.2d 576 (5th Cir. 1970). See 4 J. Rabkin & M. Johnson, Federal Income Gift and Estate Taxation § 53.04B(4), (1974).

impose the entire federal estate tax burden upon the widower, the Ohio Supreme Court, after rejecting the contention that this was the result the decedent intended, required an equitable contribution from the trustee of the non-probate trust assets since those assets generated additional estate taxes and thus contributed to the common obligation imposed on the estate. It is the proper application of the law reflected in these cases that is the essence of this appeal.

In their resolution of the problems posed in applying Ohio law to the case at bar the Commissioner and the Tax Court place significant emphasis on the effect of Campbell v. Lloyd, *supra*, and Hall v. Ball, *supra*, on McDougall, and Y.M.C.A. v. Davis. In *Campbell* the Ohio Supreme Court reversed its prior decision in Miller v. Hammond, 156 Ohio St. 475, 104 N.E. 2d 9 (1952), where it had exonerated from federal estate tax liability the share of the "net estate" a surviving spouse received under § 10503–4 of the Ohio General Code[4] when she elected to take against the will. Faced with this situation again, this time after *McDougall* had been decided, the *Campbell* court decided that the term "net estate"

in § 10504–55 of the Ohio General Code[5] referred to the same property as the statute construed in *Miller* and described the amount of property which remained in the estate after the deduction of the federal estate taxes. Thus the share of the surviving spouse was no longer exonerated. In arriving at this decision the court, frankly motivated by the inequitable result permitted by the statutory interpretation in *Miller*,[6] stressed that the statute would not permit an equitable apportionment. A short time later, in a per curiam opinion based only on *Campbell*, the Ohio Supreme Court decided *Hall*. Here it held that a charitable legatee, who had been bequeathed a percentage of the residue of the testatrix's estate, took a percentage of the residue remaining after the deduction of the federal estate taxes, and thus was not exonerated.

On the basis of these decisions the Commissioner and the Tax Court take the position that there is no exoneration in Ohio absent a clear expression in decedent's will that such is his intention. Taxpayer submits that this is an incorrect interpretation of Ohio law. He argues essentially that Y.M.C.A. v. Davis

---

4. General Code § 10503–4, Ohio's Statute of Descent and Distribution, is substantially unchanged in O.R.C. § 2105.06 (1968) and read, in pertinent part, as follows:

"When a person dies intestate having title or right to any personal property, or to any real estate or inheritance in this state, such *personal property* shall be *distributed, and* such *real estate* or inheritance shall *descend and pass* in parcenary, except as otherwise provided by law, in the following course:

      \*      \*      \*      \*      \*

"2. If there be a spouse and one child, or its lineal descendants, surviving, one-half to the surviving spouse and one-half to such child or its lineal descendants, per stirpes.

"3. If there be a spouse and more than one child, or their lineal descendants, surviving, one-third to the surviving spouse and the remainder to the children equally, or to the lineal descendants of any deceased child, per stirpes."

5. General Code § 10504–55, Ohio's provision permitting the spouse's election against the

will, is substantially unchanged in O.R.C. § 2107.39 and read, in pertinent part, as follows:

"After the probate of the will and filing of the inventory, appraisement and schedule of debts, the Probate Court on the motion of the executor or administrator, or on its own motion, forthwith shall issue a citation to the surviving spouse, if any, to elect whether to take under the will or under the statute of descent and distribution. In the event of election to take under the statute of descent and distribution, *such spouse shall take not to exceed one-half of the net estate. . . .*"

6. 162 Ohio St. at 206, 122 N.E.2d at 697:

"Such a decision, however, results in the widow receiving as her 'one-half of the net estate', somewhere between \$286,000 and \$296,000 (or between 37 per cent and 42 per cent) more than all the others entitled to share in the estate. In view of this result, we are inevitably though reluctantly led to a reconsideration of our decision in Miller v. Hammond, *supra*."

should control the allocation of the tax burden among the beneficiaries of decedent's will, that *McDougall* should control the allocation of the tax burden among the recipients of the non-probate assets, and that *Campbell* and *Hall* have no effect on the position he advocates. We first consider the parties' contentions concerning the law governing the non-probate assets.

With respect to Ohio Supreme Court cases, we remind that the law of the case is contained in the syllabus. Cassidy v. Glossip, 12 Ohio St.2d 17, 231 N. E.2d 64 (1967). The first syllabus of *McDougall* reads as follows:

> "1. Where assets outside of the probate estate are included in a decedent's taxable gross estate for estate tax purposes and such inclusion increases the federal estate tax and where the decedent has expressed no intention by will or otherwise as to the ultimate impact of that tax, an equitable portion of the burden of the federal estate tax should be apportioned against such assets outside of the probate estate, in the absence of a state statute requiring a different result. . . ."

This language clearly indicates that, in the absence of a clear expression of decedent's intent on the subject, where the inclusion of non-probate assets in the decedent's gross estate results in additional tax liability, apportionment of the federal estate tax burden should be made. Conversely, it appears that if the non-probate assets do not generate any additional tax liability, no apportionment should be made. Syllabus 4 of *McDougall* sets out how the estate tax liability will be allocated when apportionment is proper under Syllabus 1.

> "4. In determining the share of the common obligation represented by the estate tax which should be allocated to nonprobate assets, the value for estate tax purposes of nonprobate assets which had an effect in generating

estate tax liability should be compared with the value for estate tax purposes of probate assets which had that effect. There should then be allocated on that basis to nonprobate and probate assets respectively their proportionate shares of the whole estate tax liability."

From this it is clear that the portion of the total tax liability allocated to the non-probate assets depends not upon the value of all non-probate assets, but only upon the value of the non-probate assets that "had an effect in generating estate tax liability." If some of the non-probate assets were deductible from the decedent's gross estate they would not generate any additional taxes, would not result in any taxes being allocated against the non-probate assets, and thus it would seem that from an equitable viewpoint, they should not be charged with any part of the tax liability.

The Ohio Supreme Court did not reach this specific question in *McDougall* since all of the non-probate trusts assets involved in that case generated additional federal estate taxes. The Commissioner argues, and apparently the Tax Court agreed, that the result indicated by the language of *McDougall* quoted above and advocated by the Taxpayer is prohibited by a policy "disfavoring exoneration" emanating from *Campbell* and *Hall*.

Initially we note that the Commissioner's interpretation of the law on this matter is inconsistent with the plain meaning of the above quoted language. But more importantly, even though such an interpretation does relieve the probate estate of that part of the liability it did not generate, it fails to accomplish the general purpose behind apportionment since the additional taxes assessed against the non-probate trust assets are not apportioned among the recipients of the various gifts or benefits in proportion to the amount of tax generated by each gift or benefit.[7] Instead it results in recipients of gifts or benefits being charged with part of a burden to which

---

7. *See* 37 A.L.R.2d 215 (1954); Kahn, The Federal Estate Tax Burden Borne By A Dis- senting Widow, 64 Mich.L.Rev. 1499, 1507–09 (1964).

they did not contribute, and ultimately results in a larger tax liability being imposed on the decedent's estate and thus on all his benefactors. This is not the result achieved in *McDougall,* nor a result which is equitably justifiable, and it cannot be sustained absent a clear mandate from the Ohio Supreme Court that it is required.

As earlier noted, Syllabus 1 of *McDougall* specifically states that even if the prerequisites of the absence of the testator's intent and an increased tax liability are met, apportionment is only applicable "in the absence of ·a state statute requiring a different result." It is undisputed that such a statute was before the court in *Campbell,* and it clearly required the "different result" reached in that case. Moreover, the court specifically recognized this distinction:

"The widow further contends that 'the concept of equitable apportionment \* \* \* established' in Miller v. Hammond, *supra,* was 'restated and applied' in McDougall, Admr. v. Central National Bank of Cleveland, Trustee, 157 Ohio St., 45, 104 N.E.2d, 441. That case dealt with apportionment of the estate tax between assets which were a part of the decedent's estate under the law of this state (referred to therein as 'probate assets') and assets which were not but which were taxed by the federal government as though they were (referred to therein as 'nonprobate assets'), There was no statute which was inconsistent with an equitable apportionment of the federal estate tax burden between the probate and the nonprobate assets. . . ." 162 Ohio St. at 209, 122 N.E.2d at 698.

Thus *Campbell* cannot be considered decisive authority for the contention advanced by the Commissioner.

There was no statute involved in *Hall* inconsistent with an equitable apportionment. But that does not mean that as a result of being cited as the only authority for *Hall, Campbell* has been expanded so as to prohibit any exoneration otherwise indicated by *McDougall.* A careful comparison of these cases indicates both their consistency as well as their limitation.

While the source of the rights claimed by the spouse in *Campbell* was a statute, the source of the rights claimed by the legatee in *Hall* was the will of the testatrix. As the will was construed the charitable legatee was classified as a residuary beneficiary, traditionally the position of lowest priority with respect to the satisfaction of the testator's debts. 2 C. Davies, Ohio Probate Practice 529 (6th ed. 1973). In the absence of decedent's direction it would have been inconsistent to exonerate one beneficiary while charging the remaining beneficiaries who are identically situated, particularly when it is remembered that it was the pronouncement of the testatrix which classified the beneficiaries in the first place. Moreover, such a result would lead to an inequity similar to that which motivated the *Campbell* court, since the charitable legatee's percentage of the residuary would be figured on a larger "net estate" than the percentages of the remaining residuary legatees. Simply stated, both cases relied upon by the ·Commissioner prohibit exoneration when it would be inconsistent with the source of the recipients' rights, be it a statute or the will of the testator. However, they do not require that the clear language of *McDougall* should be ignored and transfers of non-probate assets should be charged where, as in *McDougall* and the case at bar, no statute or pronouncement of the testator requires such a result. Therefore, we conclude that, to the extent the transfers of non-probate assets involved herein do not generate tax, Ohio would not charge them, and the Tax Court decision to the contrary must be reversed.

Next we turn to the probate aspect of this case. Here Taxpayer argues that Y.M.C.A. v. Davis should be controlling and thus that entire federal estate tax burden attributable to the probate estate should fall upon Item 10, which he construes to be the residuary clause. The Commissioner apparently does not dispute Taxpayer's construction of the wil'

but instead argues that the law advocated by Taxpayer no longer controls in Ohio in light of his reading of *McDougall, Campbell* and *Hall.*

In this regard, we note that the cardinal rule of will interpretation in Ohio is to ascertain and give effect to the meaning and intent of the testator's language in his will. 56 O.Jur.2d Wills § 519 (1963). As mentioned previously, the Commissioner's reading of Ohio law here and with respect to the non-probate assets would result in not only shifting the tax burden, but would also cause reduction of both the marital and charitable deductions as well as an increase in the estate's overall tax liability of $2,344,746.55. In rejecting interpretations which would lead to similar results, both federal and state courts have considered the notion that such a result was intended by the testator as being "incredible" and contrary to what one would presume a testator's normal intent to be; that is, to maximize his deductions and minimize his tax liability. Dodd v. United States, 345 F.2d 715 (3d Cir. 1965); Gesner v. Roberts, 88 N.J.Super. 278, 212 A.2d 43 (1965); Case v. Roebling, 42 N.J.Super. 545, 127 A.2d 409 (1956). Examination of Penney's will indicates that he also did not intend the result advocated ·by the Commissioner. This is particularly evident when it is considered that ΄Item 3 of the will is framed in the traditional language of a formula marital bequest,[8] and, as the Tax Court noted, is "designed to increase to 50 percent of the adjusted gross estate the amount of all property passing to his [decedent's] spouse which qualified for the marital deduction."[9] Under these circumstances we are not persuaded that the result advocated by the Commissioner was intended by the testator as a consequence of the omission of a "tax clause." The question remains whether the trio of cases cited by the Commissioner and the Tax Court require such a result, when

the application of Y.M.C.A. v. Davis would not.

As previously noted the decedent in *McDougall* died intestate, and thus no issue of apportionment of federal estate taxes among the beneficiaries of the decedent's will was involved in that case. In addition, the *McDougall* court specifically distinguished the two cases directly involved here on that basis:

"The instant case is not like Young Men's Christian Ass'n. v. Davis, *supra,* where, by the terms of her will, the testator indicated a preference for certain legatees by providing for them specifically and then specifically stating that what was left was to go to other legatees. In such an instance, especially where only probate assets are involved, it is apparent that those who are designated by the testator to take what is left over were intended by the testator to bear the burden of the debts, estate tax and other obligations of the estate, while the testator did not intend that those who were specifically provided for were to bear that burden." 157 Ohio St. at 57, 104 N.E. 2d at 447.

Thus the court was not only not confronted with a Y.M.C.A. v. Davis factual situation, but also specifically sought to insure that its adoption of equitable apportionment in a case where the decedent died intestate would not be construed to prohibit any exoneration otherwise permitted by that case in a situation where the decedent's intent was evident from the terms of his will. So reconciled, *McDougall* does not alter the law set out in Y.M.C.A. v. Davis.

The same may be said as far as *Campbell* is concerned in view of the Ohio law that the widow's election to take against the will removes it from the case as far as she is concerned. Weeks v. Vandeveer, 13 Ohio St.2d 15, 233 N.E.2d 502 (1968); Winters Nat'l Bank & Trust Co. v. Riffe, 2 Ohio St.2d 72, 206 N.E.2d 212 (1965).

8. 5 Bove-Parker Revision: Page on Wills § 38.15 (1962).

9. *Supra* note 1, 59 T.C. at 105.

*Hall,* on the other hand, is not as easily distinguishable since it involved the construction of a will and dealt with an issue similar to the one considered in Y.M.C.A. v. Davis. However, it does not constitute an abandonment of the principles reflected in that case. It holds only that a residuary charitable legatee is not exonerated from federal estate tax liability absent an expression of such an intent from the testator. This is wholly consistent with the traditional view of the position occupied by residuary legatees and with the decision in Y.M.C.A. v. Davis. *Hall* does not hold that the testator's specific bequests are chargeable with a portion of the tax burden, nor does it hold that all charitable bequests, whether specific or residuary, must bear a portion of the tax burden. It simply does not reach these questions. Suffice it to say that, in view of the distinction drawn in *McDougall* and the restrictive approach adopted in *Campbell, Hall,* neither alone nor in conjunction with the other cases, alters the law of Y.M.C.A. v. Davis, or requires the harsh result advocated by the Commissioner and reached by the Tax Court.

The decision of the Tax Court is reversed, and the case remanded for a recomputation of any estate tax due in accordance with the foregoing opinion.