WITTENBERG UNIVERSITY ET AL.,
APPELLEES, *v.* WATERWORTH ET AL.,
APPELLANTS; WESTERN COLLEGE
ALUMNI ASSN., APPELLEES, ET AL.

(No. C-830493—Decided
February 1, 1984.)

*Messrs. Porter, Wright, Morris & Arthur, Mr. Earl F. Morris* and *Mr. Jon M.*

*Anderson,* for plaintiffs-appellees Wittenberg University, Midland Lutheran College, First English Lutheran Church and Salvation Army of Cincinnati.

*Messrs. Porter, Wright, Morris & Arthur* and *Mr. Louis J. Schneider, Jr.,* for plaintiffs-appellees Lexington Unit, Shriner's Hospital for Crippled Children; Shriner's Hospital for Crippled Children Burns Institute; and Eastern Star Home of Hamilton County.

*Messrs. Millikin & Fitton* and *Mr. James E. Michael,* for defendant-appellee Western College Alumni Association, Inc.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Mr. Richard A. Green,* for defendants-appellees Attorney General of Ohio, Miami University and Medical College of the University of Cincinnati.

*Messrs. Taft, Stettinius & Hollister, Mr. Robert T. Keeler* and *Mr. Scott A. Siebels,* for defendants-appellants David G. Waterworth, Kit S. Kapp, Deborah Anne Arce, Candie Stein, Billie Marie Gaffney and Daphne Hansen.

*Messrs. Lindhorst & Dreidame* and *Mr. Leo J. Breslin,* for defendant-appellant Margo T. Shadle.

*Mr. Paul E. Jones,* for defendants-appellants Patsy Wilson and Randall Bacher.

*Messrs. Chalfie & Chalfie Co., L.P.A.* and *Mr. James J. Chalfie,* for defendants-appellants Beatrice Anderson and Priscilla Luring.

*Messrs. French, Marks, Short, Weiner & Valleau* and *Mr. Robert Houston French,* for defendant-appellant Florence B. Emig, Executrix of the Estate of Mae Emig.

*Mr. Richard B. Stephenson,* for defendant-appellant Oscar Homan.

BLACK, J. The single assignment of error[1] presents the question whether under the will of Katherine E. Hohmann

---

[1] The single assignment of error reads: "The Trial Court erred in granting summary judgment in favor of the Hohmann charitable residuary legatees, and in denying

("testatrix"), those parts of her residuary estate that she bequeathed to charitable institutions should be reduced by proportionate amounts of the federal and state estate taxes (referred to jointly as "death taxes") payable by her estate, thus shifting the entire burden of death taxes to the remaining parts of the residuary estate bequeathed to individual beneficiaries. The probate judge held that the will expressed testatrix's intention that the charitable parts should not be so reduced, and we agree.

Item I of the will directed that "all my just debts, funeral expenses, taxes, and costs of administration of my Estate be paid as soon as possible after my death." Items II through VI bequeathed two cemetery lots and designated articles of tangible personal property to named individuals and a charitable institution.

Item VII disposed of the residue, and the following opening paragraphs contain the language which must be interpreted to answer the single question in this appeal:

"ITEM VII. All the rest, residue and remainder of my Estate, real, personal or mixed, remaining after the specific bequests set forth and payment of all debts, *except Federal and State Estate Taxes,* I will and direct shall be divided into *One Hundred (100) equal parts* based upon inventory valuations or valuations on the date six (6) months after my death, which ever valuation shall be more proper and equitable. I hereby give my Executor and Trustees full power to make such sales of real and personal property as are necessary to divide my Estate into said *equal parts.*

"I give, devise, and bequeath the *One Hundred (100) parts* as aforesaid to the following persons and institutions: * * *" (Emphasis added.)

Thirty-six parts of the hundred were given to eighteen named charitable institutions ("the charitable parts"), and these parts qualified as deductions for federal estate tax purposes.[2] The remaining sixty-four parts were given to, or for the benefit of, eighteen named individuals ("the noncharitable parts").

Item VIII of the will provided that the indebtedness of any named beneficiary to the testatrix would reduce his or her beneficial share. Item IX (the last one) nominated and appointed her executor and the co-trustees for those portions of her residue requiring trustees, and gave these fiduciaries full administrative powers; it also provided for a bank to serve as a successor fiduciary in case of a vacancy.

The executor filed a federal estate tax return in which he reported a gross estate of $3,542,783.93 and claimed that the charitable parts of the residue were not to be reduced by any part of that tax, charging (allocating) the entire tax to the noncharitable parts. The Internal Revenue Service disagreed with this method of computation, charged the estate tax against all the residuary parts, charitable or not, and assessed a deficiency of $164,515.13, which the executor paid. The increase in tax arose because some valuations of assets were changed, but principally because when the charitable parts

---

summary judgment in favor of the noncharitable residuary legatees."

It has no merit, because for the reason stated in the opinion, the court's judgment was without error.

[2] The last paragraph of R.C. 5731.17(A) provides that amounts deductible for Ohio estate tax purposes as charitable gifts shall not be reduced by the amount of any estate, succession or inheritance taxes that otherwise would be payable out of any bequest, legacy, or devise qualifying as a charitable gift. Thus, it would appear that it is only the federal estate tax that is to be allocated by this decision. This paragraph of R.C. 5731.17(A) may have lead the draftsman of the will *sub judice* to believe that no death taxes could reduce a charitable part of the remainder, but the provision is not applicable to the federal estate tax.

were reduced by their proportionate share of the entire tax, the charitable deductions were equally reduced and the net taxable estate increased. The difference in amounts receivable by the charitable and noncharitable beneficiaries under the two computations is illustrated by the following table:

| Method of Computation | Amount of One Charitable Part | Amount of one Non-charitable Part |
|---|---|---|
| Death taxes are charged only to noncharitable beneficiaries | $33,444.66 | $20,323.78 |
| Death taxes are charged to all residuary beneficiaries, charitable or noncharitable | 23,551.13 | 23,551.13 |
| Difference | $ 9,893.53 (decrease) | $ 3,227.35 (increase) |

State law, not federal tax law, determines what parts of an estate are reduced by death taxes. *Riggs* v. *Del Drago* (1942), 317 U.S. 95; *In re Estate of Penney* (C.A. 6, 1974), 504 F. 2d 37, 40. For this reason, the seven plaintiffs-appellees sought a declaratory judgment from the probate division, asking it to rule that the death taxes must be allocated exclusively to the noncharitable parts. After the filing of cross-motions for summary judgment, the trial court ruled in favor of the charitable beneficiaries. It found "as a fact that the testatrix, Katherine E. Hohmann, intended that Plaintiffs and certain Defendants, the charitable residuary legatees of her estate, should receive their respective allotments of one hundred (100) parts of the residue of her estate, as determined before calculation of Federal and State Estate Taxes, and undiminished by such taxes," quoting from the final appealable order.

The Ohio law at the time the testatrix died was that in the absence of any expression of the testatrix's intent about the allocation of federal estate taxes, they must be paid from the residuary estate, whether or not any one or more of the residuary beneficiaries were charitable institutions, bequests to which qualify for the charitable deduction.[3] *Hall* v. *Ball* (1954), 162 Ohio St. 299 [55 O.O. 175]; *Y.M.C.A.* v. *Davis* (1922), 106 Ohio St. 366. The question, then, is whether the Hohmann will expressed an intent that the charitable parts of the residue should not be reduced by any part of the federal estate tax and that the entire amount of that tax should be charged against the noncharitable parts. The focus is on the language of the will. *In re Estate of Penney, supra; Townsend's Exrs.* v. *Townsend* (1874), 25 Ohio St. 477. Every phrase must be given its ordinary meaning, and the courts cannot add to or detract from the language used by the testatrix.

"The court must assume that

---

[3] Approximately six months after the testatrix's death the Ohio Legislature changed the general rule applicable in the absence of any expression of intent. R.C. 2113.88 now provides that in making an apportionment of death taxes among persons interested in the estate, "any exemption, deduction, or credit directly attributable to a particular legacy, devise, or gift shall inure to the benefit of the legatee, devisee or donee." This reversed the Ohio "non-apportionment" rule and adopted what is known as the "equitable apportionment" rule. It is not applicable to the instant case because the testatrix predeceased the effective date of this legislation.

testatrix meant what she said, and surely cannot ascribe a meaning contrary to the ordinary and usual significance of the language used." *Oglesbee* v. *Miller* (1924), 111 Ohio St. 426, 433.

In our judgment, as in the judgment of the probate judge, "the ordinary and usual significance" of Item VII is that the division into one hundred equal parts shall be made *after* deducting the specific bequests and the testatrix's debts (and the cost of administration, as required by Ohio law) but *before* deducting any death taxes. (The executor was given the power to sell assets in order to make the division into those one hundred equal parts.) This division into equal parts before considering the impact of death taxes has, in other instances, been called a "gross equality." *In re Shubert's Will* (1962), 10 N.Y. 2d 461, 473, 180 N.E.2d 410, 416. The testatrix then directed that the hundred parts should be distributed to the specific residuary beneficiaries as listed in Item VII, not calling the parts "equal parts" at this point. The necessary implication is that the charitable parts shall not be reduced by any portion of the federal estate tax. They did not generate any portion of that tax, and the unreduced amount of the charitable parts furnished greater deduction and a lesser death tax. "[A] testator's normal interest would be to maximize deductions and minimize tax liability." *Sawyer* v. *Sawyer* (1977), 53 Ohio App. 2d 323, 325 [7 O.O.3d 393]. It is entirely reasonable to imply from the language of the will that the testatrix meant to relieve the charitable parts of the burden of the federal estate tax.

We cannot agree with the interpretation advanced by appellants. They would emphasize the phrase "equal parts," insisting that the parts as distributed must be made equal by reducing each part by its proportionate share of the death taxes. The sequence of their proposed division, as the probate judge pointed out, would be: distribute the specific bequests, pay the testatrix's debts and the probate administration costs, divide the residue into a hundred equal parts, determine and pay the death taxes, divide the balance (again) into a hundred parts, and distribute them. This interpretation has two impermissible results, alternative in nature. It either renders the phrase, "except Federal and State Estate Taxes," meaningless, or changes its meaning. The phrase would have no meaning because there would be no need for the first or gross division into a hundred parts prior to computing and paying the death taxes; that first division is superfluous. On the other hand, appellants' interpretation would have the alternative effect of changing the meaning of the key phrase. If the division of the residue that determines how much each residuary beneficiary will receive is made only after reducing the entire residue by the death taxes, then the key phrase will, in effect, be read to mean *"including* Federal and State Estate Taxes." This interpretation is unacceptable because it either reduces this clause to insignificance or converts its meaning to one directly opposite to "the ordinary and normal significance of the language used."[4]

We find no error in the judgment below. The testatrix's intention was sufficiently expressed in her will. We affirm.

*Judgment affirmed.*

PALMER, P.J., and KEEFE, J., concur.

---

[4] We are not impressed by appellants' argument that the references in Items I and IX to the executor's authority to pay taxes have any significance. These are routine provisions that are largely superfluous, and they do not speak to the principal question.