ESTATE OF COYLA BURNELL SWALLEN, DECEASED, S. PAUL MATHEWS AND ROBERT A. DAVIS, CO-EXECUTORS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Swallen v. Commissioner
Docket No. 10296-91
United States Tax Court
T.C. Memo 1993-149; 1993 Tax Ct. Memo LEXIS 141; 65 T.C.M. (CCH) 2332; April 6, 1993, Filed *141 For petitioner: Thomas C. Rink and Cynthia A. Fazio. For respondent: Jeffrey L. Bassin. HAMBLEN
HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Chief Judge: Respondent determined a deficiency of $ 741,689 in petitioner's Federal estate tax. In addition, respondent determined deficiencies in petitioner's Federal gift tax for the taxable years 1986 and 1987 in the amounts of $ 47,150 and $ 99,746, respectively. This case is before the Court on the parties' cross-motions for partial summary judgment pursuant to Rule 121. Unless otherwise noted, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect on the date of decedent's death. The sole issue raised by the motions is whether Ohio Revised Code Annotated section 2113.86 (Anderson 1986)) (Ohio apportionment statute) applies to petitioner so as to require that Federal estate tax be allocated among the estate's beneficial shares based on their value or whether Coyla Swallen's will effectively precludes application of the Ohio apportionment statute. Because we find that language in decedent's will is clearly contrary to application *142 of that statute, we grant respondent's cross-motion for partial summary judgment and deny petitioner's motion for partial summary judgment. FINDINGS OF FACT All of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated as our findings by this reference. Such facts are stated for the purpose of deciding the motions for partial summary judgment and for no other purpose. Petitioner in this case is the Estate of Coyla B. Swallen. Coyla B. Swallen (decedent) died testate on June 27, 1987, survived by her spouse, Wilbur Swallen (Mr. Swallen). Decedent resided in Ohio on the date of her death. At the time of the filing of this petition, the executors of decedent's estate were both residents of Ohio. On October 13, 1972, decedent created an irrevocable inter vivos trust (Swallen trust), naming herself as grantor, and C.A. Fiscus and Stanley Goodman as trustees. The trust corpus consisted of 3,050 shares of stock of AMP, Inc., and any other property assigned or delivered to the trustees in the future. The terms of the Swallen trust provided that decedent was to receive the trust's income and principal, as needed during her life, and upon *143 her death, decedent's husband, Mr. Swallen, was to receive the income and principal, as needed, during his life. Upon the death of the last to die, the Swallen trust would terminate and be distributed as designated in the trust instrument. On December 20, 1985, decedent executed a Last Will and Testament (the will) in which she designated S. Paul Mathews and Robert A. Davis as executors of her estate. On February 19, 1987, decedent executed a codicil to the will effecting modifications to the terms of a charitable bequest that have no bearing on the issue before us. The will contains a general bequest to some separate trusts benefiting decedent's children and their heirs. That bequest amount, as stated in the will, is designed to absorb any unused unified credit to which decedent is entitled. The residue of decedent's estate under the will is to pass to decedent's surviving spouse, Mr. Swallen, as a marital bequest. On July 22, 1987, decedent's will was admitted to probate by the Court of Common Pleas (Probate Court), Hamilton County, Ohio. The executors timely filed a Federal estate tax return on behalf of petitioner on March 24, 1988. The return reported a gross estate *144 of $ 3,298,745 and a taxable estate of $ 1,922,241. According to the return, the taxable estate consists solely of decedent's interest in the Swallen trust. Deductions claimed on the return against the gross estate consisted of expenses of the estate and debts of the decedent totaling $ 132,749, a charitable deduction in the amount of $ 21,477, and a marital deduction in the amount of 1,222,278. The marital deduction claimed on the return was computed by valuing the residue passing to Mr. Swallen. The Federal estate tax due from decedent's estate was paid solely from funds of the Swallen trust. Petitioner contends that this apportionment was required by the Ohio apportionment statute. None of the Federal estate tax burden was allocated to the residue of the estate, i.e., the marital bequest. Respondent contends that decedent's will precludes the application of the Ohio apportionment statute to decedent's estate and that the residuary estate, i.e., the marital bequest, must discharge the Federal estate tax, which would reduce the marital deduction. After the notice of deficiency was issued, the executors brought an action in the Probate Court to establish that they had acted *145 properly in applying the Ohio apportionment statute. Respondent was not a party to the proceeding in the Probate Court. A referee's report to the Probate Court determined that the apportionment statute applied in the administration of decedent's estate and that the executors had acted properly. At our request, petitioner asked for clarification of the referee's report to determine if the marital bequest was an impermissible source of estate tax. The amended referee's report does not clarify the ambiguity of the first report. The parties agree that Ohio's apportionment statute applies in this case unless decedent specifically provided otherwise in her will or another governing document. Respondent contends that decedent's will clearly reflects decedent's intent to avoid the application of Ohio's apportionment statute and, instead, requires the residue of her estate to pay all of the Federal estate tax. Petitioner asserts that Ohio's apportionment statute applies to apportion petitioner's estate tax because decedent did not clearly evince an intention in her will to exempt her estate from application of the Ohio apportionment statute. Decedent's will states in pertinent part *146 as follows: ITEM I. Payment of Debts, Taxes and Expenses.
(A) I direct my Executor, to pay from the residue of my estate, or from funds available to my Executor from other sources, all my just debts (including all expenses for my medical care), funeral expenses, and costs of the administration of my estate, except as limited by the following Section (B). I further direct my Executor to pay from the residue of my estate, or from funds available to my Executor from other sources, all inheritance, succession or estate taxes, that may be lawfully levied by reason of my death upon the inheritance of, succession to or transfer of all property which may be included in my estate, or in the list of property used in the tax computation under the terms of any such tax law, together with all interest on any such taxes. * * * Except as required under Section (B) below, I further direct that no tax or interest thereon paid by my Executor shall be charged by my Executor against the share of the principal or income of any surviving joint tenant, donee, legatee, devisee, insurance beneficiary, or trust beneficiary, so long as the funds or property in the hands of my Executor, or made *147 available to my Executor, are sufficient to pay the same. (B) Notwithstanding the foregoing, my Executor shall not pay any of the following taxes: (1) any "generation-skipping" tax imposed by Chapter 13 of the Internal Revenue Code (or the corresponding provision of any subsequent federal tax law) on any property of which I am the "deemed transferor"; (2) any estate or inheritance tax attributable to property included in my gross estate as a lump sum distribution under Section 2039(f) of the Internal Revenue Code (or the corresponding provision of any subsequent federal tax law); or (3) any estate or inheritance tax attributable to any property in which I held a life interest and which is included in my estate under Section 2044 of the Internal Revenue Code (or the corresponding provision of any subsequent federal tax law). The taxes enumerated in the preceding sentence shall be paid from the property to which the tax is attributable or by the beneficiary or beneficiaries succeeding to such property, on a pro rata basis if there shall be more than one beneficiary. ITEM V:
* * * (B) In the administration of my estate, the Executor shall have, in addition to or, if inconsistent *148 therewith, in lieu of the powers and duties conferred tor [sic] imposed upon the Executor by law, all of the powers and duties conferred or imposed upon the Trustees by the Irrovocable [sic] Trust Agreements referred to in ITEM II, of this Will, to the extent the same are applicable, and said provisions of said Trust Agreements are referred to hereby and incorporated herein with like effect as though the same had been set forth herein in full for this purpose only. Such powers and duties shall be exercised without the approval or order of any Court. I hereby authorize the Executor, in the Executor's sole discretion: (1) To join with my husband, WILBUR H. SWALLEN, or the representative of his estate, in any federal or state income tax return or other tax return which my estate, or the representative thereof, is permitted by applicable tax law to file jointly with my said husband or his estate or the representative thereof. (2) To disaffirm any joint return which the applicable tax law permits the Executor to disaffirm, but the Executor shall not be required to disaffirm any return. (3) To signify my consent to having any gift made by my husband treated as made one-half (1/2) by *149 me, and to revoke any such consent or any similar consent signified by me during my lifetime, all as permitted by any federal or state gift tax law. (4) To enter into any agreement with my said husband, or the representative of his estate for the apportionment of any tax based upon any such joint return or on any joint return filed by me during my lifetime, or by my said husband as surviving spouse, or any tax resulting from any such consent between my estate and my said husband, in such manner as the Executor's sole discretion may deem advisable, without regard to the amount which would otherwise be chargeable to me or to my estate; to perform any such agreement or, in the absence of any such agreement, or if my said husband, or the representative of his estate, fails or refuses to enter into any such agreement of [sic] perform the same, to pay such amount or all of any such tax as the Executor, in the Executor's sole discretion may deem advisable, without any duty to seek reimbursement or contribution from my said husband or his estate. (5) To charge and apportion any tax so paid to the income or principal of my residual estate in such manner as the Executor, in the Executor's *150 sole discretion may deem advisable. It is my intention in granting the foregoing authority to the Executor to empower the Executor to act in the same manner and with the same discretion as I might act, if living, with the object of minimizing the combined taxes of my said husband and myself or my estate, even though it may result in additional liabilities for my estate, and any determination made by the Executor pursuant to said authority shall be final and binding on all persons. * * * I further hereby authorize the Executor, in the Executor's sole discretion, to claim as deductions in computing the taxable income of my estate, all or any part of the amounts which would otherwise be allowable as deductions for the purpose of computing the federal estate tax on my estate, [and] in connection therewith, to waive any right to have such amount allowed as deductions for the purpose of computing such federal estate tax, and subject to the provisions of the applicable tax law, to allocate any such deductions to such items of income and to such beneficiaries of my estate as the Executor, in the Executor's sole discretion, may deem advisable in the light of accepted trust accounting *151 principles; and any determination made by the Executor pursuant to the foregoing authority shall be final and binding on all persons. [Emphasis added.] OPINION Rule 121(a) provides that either party may move for a summary adjudication upon all or any part of the legal issues in dispute. If there is no genuine issue as to any material fact, a decision may be rendered as a matter of law. Rule 121(b); Zaentz v. Commissioner, 90 T.C. 753, 754 (1988). Petitioner and respondent agree that there is no genuine issue of material fact with respect to their motions and that the only issue is whether the Ohio apportionment statute applies to control the allocation of petitioner's Federal estate tax liability. We disagree with petitioner's threshold argument that we are bound by the referee's report filed with the Probate Court, which stated that the executors had acted properly in applying the Ohio apportionment statute. The referee's report was the result of a nonadversarial proceeding in which respondent was not represented. Consequently, the report is not "binding" on respondent in the sense of res judicata or collateral estoppel. Montana v. United States, 440 U.S. 147, 153 (1979); *152 Commissioner v. Estate of Bosch, 387 U.S. 456, 462-463 (1967); Commissioner v. Sunnen, 333 U.S. 591, 597 (1948). When a Federal tax liability turns on the characterization of underlying property interests or property rights under State law, a State court's determination of those interests is obviously relevant to the Federal tax controversy. However, in Commissioner v. Estate of Bosch, supra at 465, the Supreme Court stated that Federal courts are not conclusively bound by a lower State court's adjudication of property rights when the United States is not a party and need only give such lower State court rulings "proper regard". A Federal court is bound by the rulings of the highest court of a State when it has spoken on the relevant issue since such a court is deemed to be the best authority of its own law. Id.
We have found no case in which Ohio's highest court has addressed the issue of when the State's apportionment statute applies in the context of Federal estate tax. Accordingly, we have considered the referee's report and will make our own inquiry as to the application *153 of the Ohio apportionment statute. Section 2056 provides for a marital deduction from a decedent's gross estate for the value of property interests passing from decedent to the surviving spouse. Congress has removed all dollar limits on the marital deduction for estates of decedents dying after December 31, 1981. Economic Recovery Tax Act of 1981, Pub. L. 97-34, sec. 403(a)(1)(A) and (e)(1), 95 Stat. 172, 301-305. In determining, for marital deduction purposes, the value of the interest passing to the surviving spouse, section 2056(b)(4) provides that: (A) there shall be taken into account the effect which the tax imposed by section 2001, or any estate, succession, legacy, or inheritance tax, has on the net value to the surviving spouse of such interest; and (B) where such interest or property is encumbered in any manner, or where the surviving spouse incurs any obligation imposed by the decedent with respect to the passing of such interest, such encumbrance or obligation shall be taken into account in the same manner as if the amount of a gift to such spouse of such interest were being determined. Therefore, the net value of the gift received by the surviving spouse controls *154 the amount of the marital deduction. United States v. Stapf, 375 U.S. 118, 125 (1963); Estate of Reid v. Commissioner, 90 T.C. 304, 307 (1988); see also sec. 20.2056(b)-4(a), Estate Tax Regs. Although Federal law governs the application of the Federal estate tax, the impact of the tax is governed by State law. Riggs v. Del Drago, 317 U.S. 95 (1942); see Estate of Penney v. Commissioner, 504 F.2d 37, 40 (6th Cir. 1974). Thus the allocation of the obligation to pay Federal estate tax is governed by State law. Id.; In re Estate of Wycoff, 506 F.2d 1144 (10th Cir. 1974), affg. 59 T.C. 617 (1973). In petitioner's case, the amount of the marital deduction is directly affected by the manner in which the Federal estate tax liability is apportioned. If any of the Federal estate tax liability is allocated to the residual gift, the net value of the marital bequest qualifying for the marital deduction would consequently be less. Further, because the amount used to pay the Federal estate tax will not be *155 eligible for the marital deduction, additional Federal estate tax will be imposed on the amount of the residue used to pay the Federal estate tax. Therefore, an analysis of the Ohio apportionment statute is critical in deciding whether petitioner claimed the correct dollar amount as its marital deduction, and whether respondent correctly determined petitioner's tax deficiency as reflected on the deficiency notice. Although section 2002 imposes the primary obligation to pay Federal estate taxes on the executor, Congress has left it up to the decedent to say by will, if he or she wishes, what interests in the estate are to be ultimately diminished by that tax. "Historically, estate taxes were viewed, like any other transfer tax or administrative expense, as being part of the cost of administration and, absent an expression of intent in the will to the contrary, payable from the residuary portion of the estate." Johnson v. Hall, 392 A.2d 1103, 1106 (Md. 1978); Scoles & Stephens, "The Proposed Uniform Estate Tax Apportionment Act", 43 Minn. L. Rev. 907, 915 (1959); see Minan, "The Allocation of Estate Taxes by Judicial Rule: *156 A Case for Reform", 38 Ohio L. Journal 539, 542-543 (1977); "The inequity which frequently resulted from the application of this 'common law' rule, especially when the residue was left to sustain a widow or minor children, spurred many State legislatures to revise that rule through statutory enactment." Johnson v. Hall, supra at 1106. Ohio's statute follows the rule contained in many State apportionment statutes, that in the absence of an expression of intent in the will to the contrary, Federal and State estate taxes are to be apportioned among the beneficiaries in proportion to the value of the gifts they receive. The Ohio apportionment statute was enacted in 1981. On the date of decedent's death, the Ohio apportionment statute, Ohio Rev. Code Ann. sec. 2113.86 (Anderson 1986), provided in pertinent part as follows: (A) Unless a will or another governing instrument otherwise provides, and except as otherwise provided in this section, a tax shall be apportioned equitably in accordance with the provisions of this section among all persons interested in an estate in proportion to the value of the interest of each person as determined for estate *157 tax purposes. (B) Except as otherwise provided in this division, any tax that is apportioned against a gift made in a clause of a will other than a residuary clause or in a provision of an inter vivos trust other than a residuary provision, shall be reapportioned to the residue of the estate or trust. It shall be charged in the same manner as a general administration expense. However, when a portion of the residue of the estate or trust is allowable as a deduction for estate tax purposes, the tax shall be reapportioned to the extent possible to the portion of the residue that is not so allowable. (C)(1) A tax shall not be apportioned against an interest that is allowable as an estate tax marital or charitable deduction, except to the extent that the interest is a part of the residue of an estate or trust against which tax is reapportioned pursuant to division (B) of this section. In sum, subsection (A) of the Ohio apportionment statute provides for equitable apportionment of estate tax unless the testator clearly expresses an intention that the statute not apply. Subsection (B) provides that estate tax will be reapportioned from the nonresidue portion of the testamentary estate *158 to the residuary portion of the testamentary estate and reapportioned from the nonresidue portion of an inter vivos trust to the residue of the trust. Thus, the tax apportioned to the testamentary estate is paid by the estate and tax apportioned to an inter vivos trust is paid by the trust. We understand the term "equitable apportionment", as used in the Ohio apportionment statute, to mean that the estate taxes are apportioned against all persons interested in the decedent's estate to the extent of each person's percentage interest in the entire estate. We agree with respondent's determination that decedent in her will has clearly expressed her intention that the Ohio apportionment statute not be applied. Consequently, petitioner is not subject to the application of the Ohio apportionment statute with respect to payment of its Federal estate tax obligation. To determine intent, all parts of a will must be construed as a whole. Ohio Citizens Bank v. Mills, 45 Ohio St. 3d 153, 155, 543 N.E.2d 1206, 1208 (1989) (citing Townsend's Executors v. Townsend, 25 Ohio St. 477 (1874)). However, in order to determine *159 if the Ohio apportionment statute applies to decedent's estate, "the text of the will is to be scanned only to see if there is a clear direction not to apportion, and if such explicit direction is not found, construction of the text ceases because the statute states the rule." Johnson v. Hall, supra at 1107 (quoting In re Mills Estate, 189 Misc. 136, 64 N.Y.S. 105, 110 (1946)), and cases cited therein. In a seminal case, an Ohio appellate court held that in order for a clause to exempt an estate from the apportionment statute it must "clearly evince an intent on the part of the testator that estate taxes be paid in a manner contrary to the apportionment of O.R.C. 2113.86." In re Estate of Drosos, 575 N.E.2d 495, 497, 62 Ohio App. 3d 295 (1989). The testator's will in In re Estate of Drosos, supra at 497, directed the executor to "pay out of the principal of [her] estate all just debts." The court held that this statement was not adequate to exempt the estate from apportionment treatment, stating "Such an intent must be more specifically declared." *160 Id.
Three sections of decedent's will address the payment of estate taxes. Pertinent parts of Item I(A) provide, (A) I direct my Executor, to pay from the residue of my estate, or from funds available to my Executor from other sources, all my just debts * * *. I further direct my Executor to pay from the residue of my estate, or from funds available to my Executor from other sources, all inheritance, succession or estate taxes, * * *. While the language of the will permits the executor's use of funds other than the residue as a source for payment of Federal estate tax, these "other funds" are not specifically designated. If decedent had intended that funds from the Swallen trust be used for payment of Federal estate tax, she most likely would have said so since the Swallen trust was the only other source available to contribute the Federal estate tax payment at the time the decedent wrote the will. Respondent submits that other language in Item I(A) specifically excludes the possibility of using trust property to pay Federal estate tax. The language reads: I further direct that no tax or interest thereon paid by my Executor shall be charged by my Executor against *161 the share of the principal or income of any surviving joint tenant, donee, legatee, devisee, insurance beneficiary, or trust beneficiary, so long as the funds or property in the hands of my Executor, or made available to my Executor, are sufficient to pay the same. [Emphasis added.] We agree with respondent that the above language unambiguously expresses decedent's intent to exempt a trust beneficiary's share from contributing funds to pay the Federal estate tax. Petitioner contends that the following language of paragraph (5) of Item V evinces an intent to minimize both the income and the estate tax liability for decedent and Mr. Swallen: It is my intention in granting the foregoing authority to the Executor to empower the Executor to act in the same manner and with the same discretion as I might act, if living, with the object of minimizing the combined taxes of my said husband and myself or my estate, even though it may result in additional liabilities for my estate, and any determination made by the Executor pursuant to said authority shall be final and binding on all persons. The language of Item V preceding the above quoted language relates to Federal and State income *162 and gift tax returns and joint returns of decedent and Mr. Swallen. Paragraph (1) authorizes the executors to enter into agreements with decedent's husband regarding any joint Federal or State income tax return. Paragraph (2) authorizes the executors to disaffirm any joint return. Paragraph (3) authorizes the executors to consent to, or revoke previous consent to, having any gift made by Mr. Swallen treated as being made one-half by decedent during her lifetime. Paragraph (4) authorizes the executors to enter into agreements for the apportionment of taxes based on joint returns. Paragraph (5) authorizes the executors to charge and apportion "any tax so paid" to the income or principal of decedent's estate. This language presumably applies only to the particular tax referred to in the preceding paragraphs of Item V, that is, the Federal and State income and gift taxes reflected in the returns of decedent and Mr. Swallen. Thus, the language of Item V quoted above does not affect the apportionment of Federal estate tax addressed by decedent in Item I(A) of the will. Finally we reject petitioner's argument that other language in Item V expressing decedent's general intention to *163 maximize the marital deduction overrides decedent's specific direction to place the Federal estate tax burden on the residue of the estate. Ohio courts tend to resolve ambiguity in favor of maximizing a marital deduction on transfers of property to a surviving spouse. Estate of Penney v. Commissioner, 504 F.2d 37 (6th Cir. 1974); Sawyer v. Sawyer, 374 N.E.2d 166 (Ohio Ct. App. 1977). We have scrutinized the language of decedent's will in light of all of its provisions, Ohio Citizens Bank v. Mills, 45 Ohio St. 3d 153, 155, 543 N.E.2d 1206, 1208 (1989), and we are unable to find any ambiguity that can be resolved in favor of the marital bequest. Because the language in Item V does not override decedent's specific directions contained in Item I(A) of her will, we conclude that decedent clearly and unambiguously expressed her intent to avoid allocating the Federal estate tax burden to beneficial shares other than the residual portion of her estate. In light of the clarity of decedent's testamentary directions, her will effectively exempts petitioner estate from the purview *164 of the Ohio apportionment statute as a matter of law. We therefore hold that the Ohio apportionment statute does not apply to petitioner estate; that the executors in this case erroneously relied on the Ohio apportionment statute in calling upon the Swallen trust to pay the Federal estate tax; and that respondent's determination in the deficiency notice is correct to the extent it allocates the estate tax burden to the residue of the estate. Accordingly, pursuant to Rule 121, we shall deny petitioner's motion for partial summary judgment and grant respondent's cross-motion for partial summary judgment. Based on the foregoing, An appropriate order will be issued.