ESTATE OF Wilbur H. SWALLEN (95–1554); Estate of Coyla B. Swallen (95–1555); S. Paul Mathews and Robert Davis, Co–Executors (95–1554/1555), Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

Nos. 95–1554, 95–1555.

United States Court of Appeals, Sixth Circuit.

Argued June 4, 1996.

Decided Oct. 28, 1996.

Paul B. Calico (argued), Thomas C. Rink (briefed), Strauss & Troy, Cincinnati, OH, for Wilbur H. Swallen and Coyla Burnell Swallen.

Thomas C. Rink (briefed), Strauss & Troy, Cincinnati, OH, for Robert A. Davis and S. Paul Mathews.

Gary R. Allen, Acting Chief (briefed), Jonathan S. Cohen (briefed), Teresa T. Milton (argued and briefed), U.S. Department of Justice, Appellate Section Tax Division, Washington, DC, for Respondent-Appellee.

Before: KENNEDY and BOGGS, Circuit Judges; and RUSSELL, District Judge *.

BOGGS, Circuit Judge.

The executors of the estates of Coyla and Wilbur Swallen have appealed from the decision of the United States Tax Court that Coyla Swallen's will required that estate taxes be paid from her estate's residue, rather than being paid according to an Ohio statutory scheme that equitably apportions taxes according to the proportion of the estate taken by each interest. We believe that Coyla Swallen's will does not clearly intend to burden the residue with payment of the taxes, as is generally required by Ohio courts to avoid the application of Ohio's equitable apportionment statute. We therefore reverse the decision of the Tax Court.

I

All facts in this case were stipulated for purposes of the parties' cross-motions for summary judgment before the Tax Court. Coyla Swallen died testate on June 27, 1987, survived by her husband, Wilbur Swallen. Wilbur Swallen died testate on February 21, 1988. At all times relevant to this matter, both the Swallens and the executors of their estates were residents of the state of Ohio. Two legal instruments bear upon the disposition of Mrs. Swallen's assets: a trust document, and her will.

The Swallen Trust (the "trust") was created by Mrs. Swallen as an irrevocable inter

---

* The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

vivos trust on October 13, 1972. The trust established Mrs. Swallen as the grantor, and included a considerable amount of stock as its principal asset. The trust provided that Mrs. Swallen was to receive the trust's income and principal, as needed during her life, and, upon her death, her husband Wilbur was to have the same rights during the remainder of his life. Upon the death of both Swallens, the trust was to be distributed according to its terms.

Coyla Swallen executed a Last Will and Testament "the will" on December 20, 1985, in which she designated S. Paul Mathews and Robert Davis as executors of her estate. The will generally provided bequests to some separate trusts benefitting Mrs. Swallen's children and their heirs. Significantly, the will declared that the residue of Mrs. Swallen's estate was to pass to her husband, Wilbur. There are thus only two beneficiaries of the will: (1) the Swallens' children, who benefit from the trust; and (2) the estate of Wilbur Swallen, which takes the residue.

In addition to offering the will for probate in the Court of Common Pleas ("Probate Court") for Hamilton County, Ohio, the executors filed a timely Federal estate tax return on behalf of Mrs. Swallen's estate on March 24, 1988. The return reported a gross estate of $3,298,745, and a taxable estate of $1,922,-241. The return indicated that the taxable portion of the estate consisted solely of Mrs. Swallen's interest in the trust. The estate claimed a marital deduction in the amount of $1,222,278 that was computed by valuing the residue passing to Mr. Swallen.[1] The federal estate tax due from Mrs. Swallen's estate was paid solely from funds of the Swallen trust. The executors allocated none of the tax burden to the residue of the estate that

passed to Mr. Swallen. The appellants in this case, the executors of Mrs. Swallen's estate, contend that this apportionment of the estate's tax burden was required by the Ohio apportionment statute.

Litigation then began on two separate tracks; in the Ohio state court system and in federal court. When the Internal Revenue Service (IRS) issued a notice of deficiency based upon its contention that the estate tax, according to the will, should have been paid with funds from the residue, the executors filed a will construction action in the Probate Court.[2] The purpose of this action was to establish whether or not the executors had acted properly by paying the estate taxes from the trust fund instead of from residue funds. The probate court adopted a referee's report and concluded that the executors had acted properly in apportioning the estate tax according to the Ohio apportionment statute, Ohio Rev.Code Ann. § 2113 *et seq.* (Baldwin 1993). The executors also petitioned the Tax Court to reverse the decision of the IRS taxing the estate under the assumption that the taxes had to be paid by residue funds. It is from the Tax Court's denial of their petition that the executors now appeal.

The sole issue in this appeal is whether the Tax Court correctly decided that the Ohio apportionment statute did not apply to Mrs. Swallen's will, and that the correct source for the payment of the estate taxes was the residue. On this subject, Mrs. Swallen's will states, in pertinent part:

*ITEM I. Payment of Debts, Taxes and Expenses.*

(A) I direct my Executor, to pay from the residue of my estate, or. from funds

---

**1.** Section 2056 of the Internal Revenue Code provides for a marital deduction from a decedent's gross estate for the value of property interests passing from decedent to the surviving spouse. Congress has removed all dollar limits on the marital deduction for estates of decedents dying after December 31, 1981. Economic Recovery Tax Act of 1981, Pub.L. 97–34, sec. 403(a)(1)(A) and (e)(1), 95 Stat. 172, 301–05.

**2.** The question of the proper *source* of funds to pay the taxes is itself relevant to the question of the total *amount* of tax due on the estate. Sec-

tion 2056 reduces the amount that passes tax-free pursuant to the marital deduction to account for any portion of a marital bequest that is used to pay estate taxes. That is, any funds that would have passed tax-free if they remained in the hands of a surviving spouse are taxable if they instead are used to pay estate taxes. The IRS thus explains that "[t]he amount of the marital deduction allowable to the estate of Coyla Burnell Swallen has a mathematical effect on the estate tax liability of the estate of Wilbur H. Swallen." Brief of Appellee at 4 n.3.

available to my Executor from other sources, all my just debts (including all expenses for my medical care), funeral expenses, and costs of the administration of my estate, except as limited by the following Section (B). *I further direct my Executor to pay from the residue of my estate, or from funds available to my Executor from other sources, all inheritance, succession or estate taxes, that may be lawfully levied by reason of my death upon the inheritance of, succession to or transfer of all property which may be included in my estate, or in the list of property used in the tax computation under the terms of any such tax law, together with all interest on any such taxes.* \* \* \* Except as required under Section (B) below, *I further direct that no tax or interest thereon paid by my Executor shall be charged by my Executor against the share of the principal or income of any surviving joint tenant, donee, legatee, devisee, insurance beneficiary, or trust beneficiary, so long as the funds or property in the hands of my Executor, or made available to my Executor, are sufficient to pay the same.*

Joint Appendix at 111 (emphasis added). In addition to this language concerning the administration of her estate, Mrs. Swallen's will contained the following section:

*ITEM V:*

(B) In the administration of my estate, the Executor shall have, in addition to or, if inconsistent therewith, in lieu of the powers and duties conferred [or] imposed upon the Executor by law, all of the powers and duties conferred or imposed upon the Trustees by the Irrovocable [*sic*] Trust Agreements referred to in ITEM II, of this Will, to the extent the same are applicable, and said provisions of said Trust Agreements are referred to hereby and incorporated herein with like effect as though the same had been set forth herein in full for this purpose only. Such powers and duties shall be exercised without the approval or order of any Court.

I hereby authorize the Executor, in the Executor's sole discretion:

(1) To join with my husband, WILBUR H. SWALLEN, or the representative of his estate, in any federal or state income tax return or other tax return which my estate, or the representative thereof, is permitted by applicable tax law to file jointly with my said husband or his estate or the representative thereof.

(2) To disaffirm any joint return which the applicable tax law permits the Executor to disaffirm, but the Executor shall not be required to disaffirm any return.

(3) To signify my consent to having any gift made by my husband treated as made one-half (½) by me, and to revoke any such consent or any similar consent signified by me during my lifetime, all as permitted by any federal or state gift tax law.

(4) To enter into any agreement with my said husband, or the representative of his estate for the apportionment of any tax based upon any such joint return or on any joint return filed by me during my lifetime, or by my said husband as surviving spouse, or any tax resulting from any such consent between my estate and my said husband, in such manner as the Executor's sole discretion may deem advisable, without regard to the amount which would otherwise be chargeable to me or to my estate; to perform any such agreement or, in the absence of any such agreement, or if my said husband, or the representative of his estate, fails or refuses to enter into any such agreement of perform [*sic*] the same, to pay such amount or all of any such tax as the Executor, in the Executor's sole discretion may deem advisable, without any duty to seek reimbursement or contribution from my said husband or his estate.

(5) To charge and apportion any tax so paid to the income or principal of my residual estate in such manner as the Executor, in the Executor's sole discretion may deem advisable.

It is my intention in granting the foregoing authority to the Executor *to empower the Executor to act in the same manner and with the same discretion as I might act, if living, with the object of minimizing the combined taxes of my said husband and myself or my estate,* even though it may result in additional liabilities for my estate, and any determination made by the

executor pursuant to said authority shall be final and binding on all persons.

\* \* \* \* \* \*

I further hereby authorize the Executor, in the Executor's sole discretion, to claim as deductions in computing the taxable income of my estate, all or any part of the amounts which would otherwise be allowable as deductions for the purpose of computing the federal estate tax on my estate, [and] in connection therewith, to waive any right to have such amount allowed as deductions for the purpose of computing such federal estate tax, and subject to the provisions of the applicable tax law, to allocate any such deductions to such items of income and to such beneficiaries of my estate as the Executor, in the Executor's sole discretion, may deem advisable in the light of accepted trust accounting principles; and any determination made by the Executor pursuant to the foregoing authority shall be final and binding on all persons.

Joint Appendix at 114–16.

The Tax Court concluded that the will required that the estate tax be paid from funds taken from the residue, thus affirming the decision of the IRS to issue a notice of deficiency. The executors of the Swallens' estates now appeal to us.

## II

■ We review the legal conclusions of the Tax Court *de novo. Wolpaw v. Commissioner of Internal Revenue*, 47 F.3d 787, 790 (6th Cir.1995); *United States v. Hans*, 921 F.2d 81, 82 (6th Cir.1990).

■ This case essentially requires us to sit as if we were an Ohio state court, and construe Mrs. Swallen's will according to Ohio law. We note initially that the Supreme Court has stated that federal courts are not conclusively bound by a lower state court's adjudication of property rights when the United States was not a party to the adjudication. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782–83, 18 L.Ed.2d 886 (1967). The Court did, however, conclude that federal courts must give "proper regard" to such lower court rulings, and

are bound by the rulings of the highest court of a state.

> An intermediate appellate state court ... is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.

*Ibid.* (quoting *West v. AT & T Co.*, 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940) (emphasis added)).

We also note that an Ohio intermediate appellate court has recently affirmed the decision of the probate court that the Ohio apportionment statute applied to Mrs. Swallen's will. *Matthews v. Swallen*, No. C–940443, 1995 WL 621305 (Ohio.Ct.App. Oct. 25, 1995).

The Ohio apportionment statute, for its part, is quite straightforward, and has been interpreted by the Ohio courts in an equally clear and strict manner. The statute provides that "[u]nless a will or another governing instrument otherwise provides, and except as otherwise provided in this section, a tax shall be apportioned equitably in accordance with the provisions of this section among all persons interested in an estate in proportion to the value of the interest of each person as determined for estate tax purposes." Ohio Rev.Code Ann. § 2113.86(A) (Baldwin 1993). The statute further provides that "when a portion of the residue of an estate or trust is allowable as a deduction for estate tax purposes, the tax shall be reapportioned to the extent possible to the portion of the residue that is not so allowable." Ohio Rev.Code Ann. § 2113.86(B) (Baldwin 1993). Finally, the statute also specifically directs that "[a] tax shall not be apportioned against an interest that is allowable as an estate tax \* \* \* marital deduction \* \* \*." Ohio Rev. Code Ann. § 2113.86(C)(1) (Baldwin 1993).

■ The Ohio courts have applied this statute in a very strict fashion, perhaps in response to often expressed policy concerns favoring the equitable apportionment of taxes and a general sense that apportionment is the only fair way of distributing the tax burden of an estate. Generally, in interpreting a will, Ohio courts are expected to "ascertain and give effect to the meaning and in-

tent of the testators language in his will." *Penney v. Commissioner of Internal Revenue,* 504 F.2d 37, 44 (6th Cir.1974). With regard to the payment of taxes, the seminal case of *In Re Estate of Drosos,* 62 Ohio App.3d 295, 575 N.E.2d 495 (1989), established that a will must contain a specific and clear intent that estate taxes be paid in a manner contrary to the apportionment statute in order to avoid application of the statute. *Id.* 575 N.E.2d at 497. The *Drosos* court relied on a long line of Ohio cases to support its understanding that a testator must clearly and specifically evince an intent to alter any standard apportionment before a court will depart from the default option. See *McDougall v. Central Nat'l. Bank of Cleveland,* 157 Ohio St. 45, 104 N.E.2d 441 (1952); *In re Estate of Gatch,* 153 Ohio St. 401, 92 N.E.2d 404 (1950); *In the Matter of Estate of Hilty,* No. 12–81–10, 1982 WL 6863 (Ohio Ct.App. Aug. 30, 1982). Although the government points out that many of these cases predate the Ohio apportionment statute, we believe that they set a clear direction of requiring a testator to evince a desire to avoid generally applicable apportionment methods by so stating in highly specific and unambiguous terms before a court will act upon such intentions. The decision in *Drosos,* as well as our decision here, are in accord with this tradition.

■ We thus must examine Mrs. Swallen's will to see if it contains the unambiguous language necessary to avoid application of the Ohio apportionment statute. There are three portions of the will that bear upon this question. We consider each in turn before commenting on the overall impression created by Mrs. Swallen's will.

The first, and most important, element of the will that speaks to this issue is the section entitled "Item I. Payment of Debts, Taxes and Expenses." Therein, Mrs. Swallen declared her intention that her "Executor ... pay from the residue of my estate, or from funds available to [the] Executor from other sources, all inheritance, succession or estate taxes...." We conclude that there are two facets of this statement that detract from its clarity and forcefulness in evincing an intent to avoid application of the equitable

apportionment statute. First, the statement has a very definite "boilerplate" quality about it. Obviously, payment of bills, etc. comes from residue as opposed to specific bequests. This direction sounds like a generic statement empowering and directing the executor to take care of certain routine transactions necessary to settling an estate, rather than a thoughtful effort to specify the exact source of tax payments.

Our second observation is consistent with this view: this section of the will is ambiguous with respect to the exact source of funds to pay the estate's tax burden. Although the will specifically mentions the residue, it also mentions "funds available to my Executor from other sources...." The will never specifies these other sources. This ambiguity seems consistent with the view that this initial section is a boilerplate specification of the executor's powers, to be followed later in the will by a more careful effort to specify the funds at the executor's disposal to carry out his duties.

Not only does this introductory section reference undefined "other sources," it also includes a paragraph that seems to exempt all segments of her estate from paying the estate's tax burden. This is the second element of the will bearing on the question of whether or not to apply the equitable apportionment statute. The ambiguity here stems from the sentence reading "I further direct that no tax or interest thereon paid by my Executor shall be charged by my Executor against the share of the principal or income of any surviving joint tenant, donee, legatee, devisee, insurance beneficiary, or trust beneficiary, so long as the funds or property in the hands of my Executor, or made available to my Executor, are sufficient to pay the same." The will thus seems to evince an intent to burden no one with taxes—a feat that many aspire to, but few achieve legally. This sentence also references the unknown "other funds" or "property" that might be available to the executor. It also serves to highlight the boilerplate quality of the entire section. Although the will generally only creates two benefited groups (the residue and the trust beneficiaries), this section recounts all the possible interests that could be

created by a will, and asks that none be responsible for the estate taxes. This strongly suggests that rather than a clear and careful declaration of Mrs. Swallen's intentions regarding her estate, this section is stock language, perhaps suggested by an attorney as necessary to the effective administration of estates in general.

Finally, there is an entire section of the will that is highly specific to Mrs. Swallen's situation, and it suggests that paramount in her mind was the minimization of taxes. Item V(B) of Mrs. Swallen's will includes language granting her executor special powers to join with her husband or representatives of his estate in the filing of various tax instruments and to enter into various agreements concerning taxes. After empowering her executor in five sub-points, Mrs. Swallen stated that

> [i]t is my intention in granting the foregoing authority to the Executor to empower the Executor to act in the same manner and with the same discretion as I might act, if living, with the object of minimizing the combined taxes of my said husband and myself or my estate, even though it may result in additional liabilities for my estate, and any determination made by the Executor pursuant to said authority shall be final and binding on all persons.

Although this section enumerates specific powers, these are arguably broad enough to permit the Executor to assign the tax burden in a manner so as to minimize the estate's tax burden—Item V(B)(4) specifically mentions the power to enter into special agreements regarding the payment of taxes. More importantly, the section ends by articulating Mrs. Swallen's over-arching concern for the minimization of the tax burden of her and her husband's estates.

We are thus left to construe a document that, while mentioning the residue as the source of funds to pay the estate taxes, contains considerable ambiguity regarding the payment of taxes (what are the "other sources?"), seeks to free all concerned with the will from the tax burden, delineates special powers that the executor could use to minimize the tax burden, and expresses an intent to minimize the tax burden. Recog-

nizing our duty under Ohio law to construe all the parts of the will together, and give effect to every word in the will, *Townsend v. Townsend,* 25 Ohio St. 477 (1874)(Syllabus), we cannot focus, as the Tax Court did, only on the apparently clear part of the will without stumbling upon its ambiguities. Further we recognize that Ohio courts, beyond resorting to the statutory equitable apportionment scheme in the face of such ambiguity, will generally resolve ambiguity in favor of maximizing a marital deduction on transfers of property to a surviving spouse. *Penney v. Commissioner of Internal Revenue,* 504 F.2d 37 (6th Cir.1974); *Sawyer v. Sawyer,* 53 Ohio App.2d 323, 374 N.E.2d 166 (1977). These considerations lead us to conclude that the Ohio Supreme Court would apply the apportionment statute in this case rather than permit one relatively clear directive, clouded by other directives, to govern the apportionment of taxes in such a manner as to defeat the testatrix's announced interest in minimizing the estates' tax burdens. In fact, as we pointed out earlier, an Ohio intermediate appellate court has already done so. *Matthews v. Swallen,* No. C–940443, 1995 WL 621305 (Ohio.Ct.App. Oct. 25, 1995).

Where the Tax Court went wrong, we are convinced, is in its conclusion that "[i]f decedent had intended that funds from the Swallen trust be used for payment of Federal estate tax, she most likely would have said so since the Swallen trust was the only other source available to contribute the Federal estate tax payment at the time the decedent wrote the will." T.C. Memo. 1993–149, at 14 (1993). Ohio law does not require evidence of an intent to burden the segments of an estate that will ultimately pay the estate tax pursuant to the equitable apportionment statute. Rather, as we have pointed out, Ohio law requires the opposite—clear intent to avoid such statutory apportionment. Moreover, in noting that the Swallen trust was the only other source for funds to pay the estate taxes at the time the will was drafted, the Tax Court seems to forget about the "other sources" language and the lengthy string of different types of estate interests mentioned in the section that attempted to free all takers of the tax burden. These

elements serve to highlight the generic, boilerplate nature of this first section, and suggest that Mrs. Swallen started her will in this manner with the thought that she might eventually add complications (such as additional bequests, or perhaps special funds set aside to pay taxes) for which this generic language was a necessary foundation.

## III

We recognize the difficulty for the Tax Court in applying state law to answer the question: "How ambiguous does a will need to be before a court resorts to the equitable apportionment statute." Nevertheless, we are confident in our result, especially in light of the Ohio appellate court decision that agrees with us. However, this decision does not endorse the arguments of the appellants that the Tax Court did not give "proper regard," pursuant to *Bosch,* to the decision of the probate court.

Finally, we note that the position of appellants seems at odds with the understanding, articulated in *Bosch,* that federal taxation questions should not be allowed to turn on state-court property decisions when the IRS was not a party to the suit. If the Tax Court were truly bound by the state court decision, federal interests would be prejudiced without a fair chance to be heard. These considerations favor rejecting the appellants' argument that the state determination has more than persuasive force in the federal system.

We thus differ with the legal conclusion of the Tax Court, not with its method of review. The Tax Court gave "proper regard" to the probate court decisions when it recounted and attempted to apply the same Ohio law. It simply did so in an incorrect manner.

## IV

For the foregoing reasons, the decision of the Tax Court is REVERSED, and the case REMANDED for the entry of summary judgment on behalf of the appellants and the issuance of an appropriate order concerning the deficiency notice consistent with this opinion.